CV-12 5175

Andrew J. Mollica
20 Middleton Road
Garden City, New York 11530
(o) 516-528-1311
(f) 516-673-4134
Andrew J. Mollica

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y

★   OCT 1 6 2012   ★

**LONG ISLAND OFFICE**

Pervez Law, P.C.
68 South Service Road
Suite 100
Melville, New York 11747
631-427-0700
631-824-9020 (fax)
Nadia M. Pervez

SPATT, J.

TOMLINSON, M

*Attorneys for the Plaintiff*

United States District Court
Eastern District of New York

---------------------------------------------------------------X

Keith McDonald,                                :
                                              :
                    Plaintiff,                :   **VERIFIED COMPLAINT**
                                              :   **JURY TRIAL DEMANDED**
         v.                                   :
                                              :
                                              :
Melville Fire District,                       :
Melville Fire Department a.k.a                :
Melville Volunteer Fire Department, &         :
The Melville Fire District Board of Fire      :
Commissioners,                                :
                                              :
                    Defendants.               :

---------------------------------------------------------------X

Plaintiff, KEITH MCDONALD, by his attorneys, Pervez Law, P.C. and Andrew J. Mollica,

and for his Complaint against Defendants, MELVILLE FIRE DISTRICT, MELVLLE FIRE

DEPARTMENT a.k.a MELVILLE VOLUNTEER FIRE DEPARTMENT, AND THE MELVILLE

FIRE DISTRICT BOARD OF FIRE COMMISIONERS, respectfully allege as follows:

## INTRODUCTION

1. This is a proceeding for damages to redress the deprivation of rights secured to the Plaintiff under the Age Discrimination in Employment Act (as amended), 29 U.S.C. §§ 621 *et seq.* ("ADEA"), under the Title III of the Americans With Disabilities Act (as amended), 42 U.S.C. §§12112-12117, ("ADA"), under 42 U.S.C. § 1983, for Retaliation and for redress of Plaintiff's pendent state causes of action under New York Law. Plaintiff seeks damages and injunctive relief against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States, retaliating against Plaintiff for his exercise of constitutionally protected rights, and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

## JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is based upon the aforementioned statues as well as 28 U.S.C §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. § 1983; and Article 15 of the New York State Executive Law, specifically §§ 292, 296, and 297.

3. At all relevant times, the Melville Fire District has employed at least twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.  Therefore, the Defendant is an "employer" within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b), Section 5(a) of the ADA, 42 U.S.C. § 12111, and New York State Executive Law § 292(5).

4. The unlawful employment practices alleged below were committed within the County of Suffolk in the State of New York. Accordingly, venue in the United States District Court for the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(B).

## PARTIES

5. The Plaintiff is a fifty-nine (59) year-old male with a "qualified disability" having been born on February 7, 1953 and is a resident of the County of Suffolk and the State of New York.

6. Upon information and belief, the Defendant Melville Fire District ("District") is organized by virtue of the laws of the State of New York and/or is a municipality, municipal corporation, district, or special district existing by the virtues of the laws of the State of New York, and is located at 531 Sweet Hollow Road, Melville, New York 11747, Suffolk County.

7. Upon information and belief, The District is charged by the State of New York with fire protection and other emergency services within its boundaries.

8. Upon information and belief, The District has delegated its charge to provide these services to the Melville Fire Department a.k.a Melville Volunteer Fire Department ("Department") which is also located at 531 Sweet Hollow Road, Melville, New York 11747.

9. Upon information and belief, the Melville Fire District Board of Fire Commissioners, ("Commissioners") are elected officers of a municipality, municipal corporation, district, or special district existing by the virtues of the laws of the State of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in or around April 2012, alleging, *inter alia*, that the Defendants had engaged in unlawful discriminatory practices relating to his employment and retaliation.

11. Plaintiff brings this action within ninety (90) days of receiving a right to sue letter, which, Plaintiff received on or about July 20th, 2012 (*See* **Exhibit A,** "EEOC Right to Sue Letter"). More than sixty (60) days has elapsed following the filing of his charge of discrimination with the EEOC.

## STATEMENT OF FACTS

12. Keith McDonald ("Mr. McDonald") is an fifty-nine (59) year-old male having been born on February 7, 1953.

13. Mr. McDonald was duly appointed a volunteer firefighter and later qualified as an emergency medical service provider for the Department, and/or District in or around 1971. As a volunteer for Defendants, Mr. McDonald has served in the capacity of Firefighter, an Advanced Emergency Medical Technician, Paramedic, and Officer. Mr. McDonald has held the office of Captain, Lieutenant, and Vice President of the Department and he was a Commissioner of the Melville Fire District Board of Fire Commissioners for approximately ten (10) years. Mr. McDonald has received awards for his service.

14. Upon information and belief, as a volunteer firefighter and Paramedic for the District and/or Department, Mr. McDonald is entitled to the rights and privileges of a public employee.

4

15. Upon information and belief, members of the Department, such as Mr. McDonald, who have served for 30 years or more, the most senior status accorded to members in the Department, are required to earn fifty (50) service points, each year, to maintain "active member status".

16. Upon information and belief, these participation points can be earned through a variety of activities and are not limited to responding to fire alarms or participating in drills. (*See,* **Exhibit B,** "Constitution and ByLaws of the Melville Volunteer Fire Department, Melville Fire District, pg. 8, Sec. 2)( hereinafter "By-Laws").

17. Upon information and belief, benefits accorded to active members of the Department include, but are not limited to, life insurance, credits towards the Length of Service Award Program" ("LOSAP") and credit toward the Benevolent Fund, (collectively, "Benefits").

18. Upon information and belief, the LOSAP program was created under New York State Law and permits a firefighter who has earned 50 points in a calendar year to earn a year of firefighting service, which after a vesting period, results in a service award equivalent to thirty (30) dollars per month, per year of firefighting service.

19. Additionally, active members of the Department have the right to vote and hold office.

## Mr. McDonald's 2006 Medical Injury, the Seeds of Discrimination and Retaliation

20. Upon information and belief, on or about May 2, 2006, Mr. McDonald suffered from an on-the-job hip and back injury at his regular full-time job with the US Federal Aviation Administration.

21. Upon information and belief, because of Mr. McDonald's history of active duty and commitment to the Department and District, Mr. McDonald had already attained the

requisite participation points required of him for 2006.  These points satisfied the requirements of maintaining "active member status", as prescribed by Department By-Laws, a membership Mr. McDonald held since 1971.

22. Upon information and belief, because Mr. McDonald had accumulated the requisite participation points needed in 2006 to maintain his status as an active member, including maintenance of his Benefits, Mr. McDonald did not request a formal leave of absence for the remainder of 2006.

23. Upon information and belief, since Mr. McDonald suffered from a hip and back injury, which resulted in a physical impairment, he was unable to participate in drills or respond to alarms, however, pursuant to the By-Laws and his length of service, he and similarly situated individuals were not required to participate in drills and alarms.

**Disability Discrimination, Age Discrimination & Violations of 42 U.S.C. §1983**

24. Upon information and belief, the Defendants were systematically trying to push older and disabled members out of active status and into Life Membership, a quasi retirement status.

25. Upon information and belief, still recuperating from his hip injury and in anticipation of surgery, Plaintiff requested and received medical leave in accordance with the Department By-Laws, effective January 1, 2007.

26. Upon information and belief Plaintiff suffered from an adverse employment action on account of his medical condition and age, shortly after requesting medical leave.

27. Upon information and belief, in or around early January 3, 2007, the then Chief, David Kaplan, in coordination with the then Commissioners, unilaterally imposed a retroactive a rule that penalized members for not attending certain drills in

December of 2006, specifically during the period where Mr. McDonald was unable to attend drills due to his medical condition.

28. Upon information and belief, on or about January 3, 2007, shortly after Mr. McDonald requested medical leave, Mr. McDonald was suddenly and without warning, retroactively "locked out" and disciplined for not participating in the retro-actively mandated drills from 2006, which he was not required to attend pursuant to the By-Laws.

29. Upon information and belief, this "lock-out" continued indefinitely until the "locked-out" member could "make-up" the missed drills, which were retroactively mandated for everyone, including those who were exempt from drill participation based on length of service or medical leave.

30. Upon information and belief, because Mr. McDonald suffered from a medical disability and took medical leave, he was unable to attend to the drills in 2006 or make them up in the near future.

31. Upon information and belief, because Mr. McDonald had served in the Department for over 30 years, he was not required to participate in drills, at his option, pursuant to the By-Laws.

32. Upon information and belief, the new rule that resulted in a "lock-out," disproportionately affected Mr. McDonald and similarly situated individuals who suffered from a disability and/or had more than 30 years of service.

33. Pursuant to the retro-actively applied, arbitrary and capricious order, Mr. McDonald suffered an adverse employment action on account of his medical disability and age.

34. Upon information and belief, Mr. McDonald requested a formal hearing in response to the unlawful "lock-out" he was subjected to, but was repeatedly denied a hearing

7

in violation of the By-Laws, District policy, and his constitutionally protected right to due process.

35. Upon information and belief, the new rule was intentionally designed to penalize the oldest members of the Department or those members of the Department who suffered from a medical disability, setting the stage for forceful designation as "Life Member Status" in the future.

36. Upon information and belief, designation as "Life Member Status" would prevent Mr. McDonald and those similarly situated from enjoying and earning credits towards certain Benefits.

## First Amendment & Due Process Violations, Retaliatory Six-Month Suspension in 2007

37. In or around August 2007, at a Department meeting, Mr. McDonald moved to have the Department books audited.

38. Upon information and belief, Commissioner Sal Silverstri as well as his sons Steven Silvestri and Sal Silvestri Jr. were angered by Mr. McDonald's recent motion to audit the Department financial records, and acting under the color of state law, the Defendants retaliated against Mr. McDonald by subjecting him to a six- month suspension, in or around October 2007, in violation of Mr. McDonald's First Amendment Rights and without access to a fair and impartial hearing or explanation of the charges against him.

39. Upon information and belief, said suspension was a pretext for the ongoing and systematic discrimination and retaliation Mr. McDonald faced in violation of Mr. McDonald's constitutional rights and in violation of ADA, ADEA and 42 U.S.C §1983.

8

40. Upon information and belief, this suspension, an adverse employment action was on account of Mr. McDonald's disability and age and in retaliation for his request for medical leave and complaints concerning the "lock-out" which disadvantaged Mr. McDonald and those who were similarly situated.

41. Upon information and belief, said suspension deprived Mr. McDonald his right to vote, hold office, and earn credits towards and/or enjoy his Benefits and set the stage for future designation as a Life Member.

**Ongoing Discrimination, Retaliation and Retaliatory Suspension in 2008.**

42. Upon information and belief, for part of 2008, Mr. McDonald was ready, willing and able to respond to fire alarms and participate in drills but was prevented from participation due to the "lock out" and/or suspension that was imposed on him, and those similarly situated, on account of his age, disability and in retaliation.

43. On or about May 19, 2009, Mr. McDonald, represented by counsel, filed an Article 78 Proceeding to compel the Defendants to uphold Mr. McDonald's right to a hearing and/or formal grievance procedure to address his earlier unlawful suspension and "lock-out."

44. Upon information and belief, on June 17, 2008, Mr. McDonald was suspended for a second time for 364 days from approximately June 17 2008 – June 16 2009.

45. Upon information and belief, Mr. McDonald was advised that this second suspension was for allegedly violating the arbitrary and unlawful "lock-out" that began in January 3, 2007, for missing the arbitrary and unlawful drills of 2006.

46. Upon information and belief, the second suspension was a pretext for the Defendants ongoing discrimination and in violation of Mr. McDonald's constitutional

9

rights and in retaliation, including retaliation for filing the Article 78 Proceeding one month earlier.

47. On or about October 12, 2008, Mr. McDonald fell and broke his shoulder and was physically unable to respond to alarms and drills due to his medical condition.

48. Upon information and belief this medical condition did not prevent Mr. McDonald from earning service credits in other ways, such as attending classroom drills, inspections, meetings and fire schools. *See* **Exhibit C,** pg. 15, "Leave of Absence, Section (1)(b)"

49. Upon information and belief, due to Mr. McDonald's unlawful and arbitrary suspension, Mr. McDonald could not earn any participation points towards his 50-point required minimum even when he was ready, willing and able.

50. Additionally, upon information and belief, the unlawful and arbitrary suspension precluded Mr. McDonald from voting, holding office and/or enjoying Benefits.

51. Upon information and belief, had Mr. McDonald not been suspended, he would have attained the requisite participation points to remain an active member of the Department for 2008.

52. Upon information and belief, the Department and District took adverse employment actions against Mr. McDonald on account of his age and disability and intentionally prevented him from earning requisite participation points so that they could justify a future and forceful placement of Mr. McDonald, and others who were similarly situated, into Life Membership Status, a quasi retirement status.

## Arbitrary Requirements Placed on Mr. McDonald  Designed to Hinder His Ability to Regain Active Member Status in 2009

53. In or around May 19, 2009, while ready, willing and able to earn participation points, but still under suspension, Mr. McDonald's counsel received an offer from

the District to return to the Department as an active member, at the conclusion of his 364-day suspension, in exchange for withdrawing his Article 78 Petition.

54. In or around June 29, 2009, Mr. McDonald received a letter from the Chief of the Department stating that, as a condition to returning to the Department as an active member, following the end of his suspension, Mr. McDonald needed an Annual Medical Evaluation from Nassau Diagnostic Inc. ("NDI"), and had to meet other Department requirements. *See,* **Exhibit D**, "Letter dated June 25, 2009 from Chief James Harrison to Mr. McDonald."

55. In or around July 9, 2009, Mr. McDonald underwent a physical at NDI and was accorded Class C status. *See* **Exhibit E**, "District Policy, Firefighter Classifications."

56. As a firefighter with Class C status and service for over 30 years, Mr. McDonald was ready, willing and able to earn his 50-point minimum service requirement but was not permitted and/or required to respond in alarms and drills, pursuant to the By-Laws.

57. Upon information and belief, Defendants unlawfully required Mr. McDonald to participate in drills and Chauffeur Training in 2009 as a condition of attaining active member status, but said requirements were contrary to the district policy and By-Laws.

58. Upon information and belief, the arbitrary requirements imposed upon Mr. McDonald were adverse employment actions on account of Mr. McDonald's age and medical condition.

59. Upon information and belief, the arbitrary requirements imposed upon Mr. McDonald were retaliatory and designed to disadvantage Mr. McDonald and punish him for exercising his Constitutional rights.

60. Upon information and belief, in September 2009, Mr. McDonald underwent another physical with NDI, in a good faith attempt to change his classification from Class C to a higher status, in an effort to comply with the unlawful demands of the Defendants.

61. Upon information and belief and pursuant to the By-Laws, Mr. McDonald did not have to change his medical status to a higher class designation in order to earn the requisite service points required to maintain active member status in 2009, even though Defendants insisted he had had to.

62. Upon information and belief, as a Class C member, Mr. McDonald could not participate in any drills and therefore could not fulfill the arbitrary drill requirements of 2009.

**Defendants' Conspiracy To Force Mr. McDonald Into Quasi Retirement In 2010.**

63. Upon information and belief, in 2010, Mr. McDonald participated in a paramedic refresher recertification course, which included over 100 hours of classroom time, in anticipation of resuming active member status in 2010, a classification he was not afforded in 2009 despite his best efforts, and despite the fact that his application was signed by the Chief of the Department.

64. Upon information and belief, these classroom hours, in addition to other credits that were withheld from Mr. McDonald, would have been enough to satisfy Mr. McDonald's participation requirements in 2010.

65. Upon information and belief, in or around October 2010, Mr. McDonald underwent another physical at NDI, in another good faith attempt to change his medical status from Class C to Class B, so that he could meet the arbitrarily imposed conditions placed upon him.

12

66. Upon information and belief, NDI finally granted Mr. McDonald Class B status, but this status was not communicated to Mr. McDonald until late December 2010 or early January 2011.

67. Upon information and belief, the failure to communicate Mr. McDonald's change in medical status until it was too late to earn participation points through drills and alarms in 2010 was intentional and deliberate so that Mr. McDonald would not have the ability to meet the performance requirements of 2010.

68. Upon information and belief, the failure to communicate Mr. McDonald's medical designation was to sabotage Mr. McDonald's active member status and force him into Life Membership status, denying him a property interest in violation of his Constitutional rights.

## 2011 Designation of Mr. McDonald as "Life Member" in lieu of Active Service Member

69. In early 2011, upon information and belief, in a continuing effort to deprive Mr. McDonald of active member status, including his Benefits, the right to vote and hold office, Mr. McDonald was removed from active membership and placed on Life Membership, a quasi-retirement status.

70. Upon information and belief, the reason behind this change of status was because Mr. McDonald had not attained participation requirements as set forth in the By-Laws, for the years 2010, 2009, 2008, & 2007.

71. Upon information and belief, had Mr. McDonald been awarded participation credits for his paramedic recertification course and other activities in 2010, and had there not been a deliberate attempt to cause delay to Mr. McDonald's medical clearance

until late 2010/early January 2011, Mr. McDonald would have easily met his participation requirements and not been placed on Life Membership.

72. Upon information and belief, had Mr. McDonald not been placed on an arbitrary lock-out and suspended unlawfully by the Defendants during periods from 2007-2009, he would have met his participation requirements and been able to maintain active member status during said time period.

73. Upon information and belief, the Defendants acting under the color of state law, denied Mr. McDonald's requests for grievance and hearings as he was entitled to under the By-Laws.

74. Upon information and belief, immediately after being placed on Life Membership, Mr. McDonald requested reinstatement, pursuant to his medical clearance as Class B status, but was denied reinstatement.

75. Upon information and belief the Defendants unilaterally required Mr. McDonald to take an arbitrary and unlawful, one-year leave before he could return to active status – a leave not required by the By-Laws.

76. Upon information and belief, when Mr. McDonald challenged this one-year leave, upon information and belief, an amendment to the By-Laws was passed which required members placed on Life Membership to wait two (2) years before being reconsidered for active status.

77. Upon information and belief, said amendment was passed in the last quarter of 2011, almost one year after Mr. McDonald was placed on Life Membership and almost a year after Mr. McDonald demanded reinstatement, which he was entitled to pursuant to his medical clearance.

**14**

78. Upon information and belief, the Defendants, in a concerted act, acting under the color of state law, have discriminated against Mr. McDonald and other members of the Department, who have suffered from a disability or whom the Defendants perceive as too old.

79. Said ongoing discrimination denied Mr. McDonald the opportunity to earn service award credits, lose life insurance benefits, vote in elections, hold office, earn credits towards LOSAP and the Benevolent Association, and maintain active membership in an organization where Mr. McDonald has served for nearly 40 years.

80. Said ongoing discrimination and retaliation created a hostile work environment.

81. Based on the foregoing, Mr. McDonald has been subjected to the willful violation of the ADA and ADEA, and related state claims, including retaliation.

82. The above-outlined practices of the Department and District were unfair and discriminated against Mr. McDonald on account of his age and disability, were disruptive of his medical recovery and his economic well-being, as well as his participation in service credit and caused Mr. McDonald emotional distress.

83. Defendants' action, under color of state law, were willful and performed with malice and reckless indifference to Mr. McDonald's protected civil rights, including his property and liberty interests and denied Mr. McDonald of equal protection under the law.

## As And For A First Federal Cause Of Action For Employment Discrimination Based Upon Age

84. The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-83 as if set forth in their entirety here.

85. The Plaintiff avers that by the above discriminatory and retaliatory pattern and practice, the Defendants have discriminated against the Plaintiff because of his age in the terms, conditions and privileges of his employment in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

86. The Defendant's discriminatory and retaliatory acts were with malice and reckless disregard of Plaintiff's federally protected rights under the ADEA, thereby representing a willful violation of the ADEA.

87. The Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendant's discriminatory practices unless and until this Court grants the relief sought herein.

88. As a result of Defendant's discrimination and retaliation on the basis of Plaintiff's age, the Plaintiff suffered and continues to suffer economic losses.  Plaintiff requests reimbursement for all economic loss, plus liquidated damages, and attorney's fees, expert fees, costs and disbursements in an amount to be determined at trial.

**As And For A Second Pendent New York State Cause Of Action For Employment Discrimination Based Upon Age**

89. The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-88 as if set forth in their entirety here.

90. In addition, Plaintiff avers that the Defendant discriminated against the Plaintiff in the terms and conditions of his employment on the basis of his age, in violation of the provisions of Article 15 of the New York State Executive Law, specifically Executive Law §§ 296 and 297, justifying an award for all economic loss, plus

compensatory damages for emotional distress in an amount to be determined at trial.

## As And For A Third Federal Cause Of Action For Employment Discrimination Based Upon Disability

91. The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-90 as if set forth in their entirety here.

92. In addition, The Plaintiff avers that by the above discriminatory and retaliatory pattern and practice, the Defendants have discriminated against the Plaintiff because of his disability in the terms, conditions and privileges of his employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112-12117 et. seq.

93. The Defendant's discriminatory and retaliatory acts were with malice and reckless disregard of Plaintiff's federally protected rights under the ADA, thereby representing a willful violation of the ADA.

94. The Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendant's discriminatory practices unless and until this Court grants the relief sought herein.

95. As a result of Defendant's discrimination and retaliation on the basis of Plaintiff's disability, the Plaintiff suffered and continues to suffer economic losses.  Plaintiff requests reimbursement for all economic loss, plus liquidated damages, and attorney's fees, expert fees, costs and disbursements in an amount to be determined at trial.

## As And For A Fourth Pendent New York State Cause Of Action For Employment Discrimination Based Upon Disability

17

96.  The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-95 as if set forth in their entirety here.

97. In addition, Plaintiff avers that the Defendant discriminated against the Plaintiff in the terms and conditions of his employment on the basis of his disability, in violation of the provisions of Article 15 of the New York State Executive Law, specifically Executive Law §§ 296 and 297, justifying an award for all economic loss, plus compensatory damages for emotional distress in an amount to be determined at trial.

## As And For A Fifth State Pendent Law Cause Of Action For Retaliation

98. The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-97 as if set forth in their entirety here.

99. In addition, Plaintiff avers that Defendant has discriminated against the Plaintiff in the terms and conditions of his employment on the basis of retaliation, in violation of the provisions of Article 15 of the New York State Executive Law, specifically Executive Law § 296(7), justifying an award, inter alia, of back pay, front pay, benefits, and compensatory damages for emotional distress against the Defendants in an amount to be determined at trial.

## As And For A Sixth Federal Cause Of Action For Violations under 42 U.S.C. § 1983

100. The Plaintiff repeats, and re-alleges the allegations of paragraphs 1-99 as if set forth in their entirety here.

101.  Defendants, acting under the color of state law, deprived Mr. McDonald of his Constitutionally protected rights, without due process, including but not limited to his right to liberty and property.

18

102. Specifically, Mr. McDonald was deprived of his right to free speech and suffered retaliation on account of his exercise of free speech under the First Amendment of the Constitution of the United States.

103. Without due process, Mr. McDonald was deprived of his property interest and protected liberty interests in his Benefits, and said deprivation was the result of a deliberate decision taken by the Defendants.

104. Mr. McDonald was deprived of Equal Protection under the law when Defendants arbitrarily denied Plaintiff the right to reinstate his active member status after unlawfully placing Plaintiff on Life Membership.

105. Further, Defendants' amendment of the By-Laws, in or around the last quarter of 2011, which precluded Mr. McDonald from reverting back to active member status for a total of two years, after an arbitrary (1) one-year ban, was in violation of Mr. McDonald's rights under the Equal Protection Clause of the Fourteenth Amendment.

106. Defendants continue to take adverse action against Mr. McDonald, singling him out for selective adverse treatment compared with other similarly situated individuals, with the intent to inhibit or punish the exercise of his constitutional rights, with malicious or bad faith intent to injure Mr. McDonald, in violation of Mr. McDonald's rights under the Equal Protection Clause.

107. Defendants, acting under the color of state law, have deprived Mr. McDonald and continue to deprive Mr. McDonald of his protected liberty interests including, but not limited to, his reputation as a hard working and honest firefighter, a reputation which has been tarnished by the Defendants without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

108. As a result of Defendants unlawful action described herein, Mr. McDonald is being deprived and continues to be deprived of his right to hearings and grievances and overall, due process.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an Order of this Court against Defendant as follows:

109.    As and for the First Federal Cause of Action for employment discrimination upon the basis of age, a money judgment in an amount to be determined at trial for compensatory and liquidated damages, plus attorneys' fees, expert fees, costs and disbursements;

110. As and for the Second Pendent New York Cause of Action for employment discrimination upon the basis of age a money judgment in an amount to be determined at trial for compensatory damages and emotional distress, plus expert fees, costs and disbursements;

111. As and for the Third Federal Cause of Action for employment discrimination upon the basis of disability, a money judgment in an amount to be determined at trial for compensatory damages and emotional distress, plus expert fees, costs and disbursements;

112. As and for the Fourth Pendent New York Cause of Action for employment discrimination upon the basis of disability a money judgment in an amount to be determined at trial for compensatory damages and emotional distress, plus expert fees, costs and disbursements;

113. As and for a Fifth Pendent New York Cause of Action for retaliation a money judgment in an amount to be determined at trial for compensatory damages and emotional distress, plus expert fees, costs and disbursements;

114. As and for a Sixth Federal Cause of Action for Violations under 42 U.S.C. § 1983 a money judgment in an amount to be determined at trial for compensatory damages, plus expert fees, costs and disbursements.

115. An award of prejudgment interest on the money awards requested above;

116. An order awarding Plaintiff reasonable attorneys' fees as provided for under the 42 U.S.C. § 1983, ADEA and ADA

117. An order directing the Defendants to restore Plaintiff's status as an active member and provide service credit awards and restoration of all other Benefits including LOSAP, and Benevolent Fund for the years Plaintiff was improperly suspended, "locked out", or forced out, in an appropriate amount to be determined at trial.

118. An order enjoining Defendants from further retaliatory action directed towards Plaintiff and others similarly situated.

119. An order awarding Plaintiff costs and disbursements; and

120. To award Plaintiff such other and further relief as this Court deems just and proper.

## JURY DEMAND

121.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

herein demands a trial by jury of all issues in this action.


Dated: Melville, New York

      October 16, 2012

Respectfully submitted,

PERVEZ LAW, P.C.

By: Nadia M. Pervez
68 South Service Road
Suite 100
Melville NY 11747
(o) 631-427-0700
(f) 631-824-9020


By: Andrew J. Mollica
20 Middleton Road
Garden City, New York
11530
(o) 516-528-1311
(f) 516-673-4134
Andrew J. Mollica

**VERIFICATION**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF SUFFOLK    )

I, Keith McDonald, being duly sworn, deposes and says: I am the plaintiff in the above-entitled action; I have read the foregoing Complaint and know the contents thereof, and same are true to my own knowledge, except for the matters herein to be alleged upon information and belief, and as to those matters, I believe it to be true.

Keith McDonald

Sworn to before me this
16 day of October, 2012

Notary Public

NADIA M. PERVEZ
Notary Public, State of New York
No. 02PE6241234
Qualified in Suffolk County
Commission Expires May 9, 2015

**EXHIBIT A**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

Keith McDonald
116 Old Country Road
Melville, NY 11747

Re:  *McDonald v. Melville Fire Department*
      EEOC Charge No.: 846-2012-00640

Dear Mr. McDonald:

The Equal Employment Opportunity Commission ("Commission") has concluded its
inquiry/investigation into your allegations of discrimination. The Commission has implemented
charge prioritization procedures to address the dual problem of our limited resources and
growing charge inventory. Under Commission procedures, we focus our resources only on those
charges that are most likely to result in findings of violations of the laws we enforce.  In
accordance with these procedures, the Commission has evaluated your charge based on the
evidence provided.

In your charge, you alleged that you were discriminated against on the basis of disability and age
(59) in violation of the Americans with Disabilities Act (as amended) ("ADAAA") and the Age
Discrimination in Employment Act ("ADEA"), respectively. You further alleged that you were
retaliated against in violation of these statutes.

Based on the review of the information submitted, it is unlikely that the Commission would find
a violation of the ADAAA or the ADEA, if it invested additional resources.

Please be advised, the Commission has completed its processing of this charge and this charge
will be dismissed.  This does not certify that the Respondent is in compliance with the ADAAA
or ADEA. No finding is made as to any other issue that might be construed as having been raised
by this charge. Included with this letter is your "Dismissal and Notice of Rights".  Following this
dismissal, you may only pursue this matter by filing a lawsuit against the Respondent.  Your
lawsuit must be filed within 90 days of receipt of this notice, or your right to sue based upon this
charge will be lost.

If you have any questions, please contact Investigator Jean E. Mulligan at (212) 336-3748.

Sincerely,

for                          Date  7-19-12

Kevin J. Berry
District Director

Enc.

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

Keith Mcdonald
116 Old Country Rd
Melville, NY 11747

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2012-00640 | **Jean E. Mulligan,**<br>**Investigator** | **(212) 336-3748** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin J. Berry*  7-19-12

Enclosures(s)

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

cc:  **MELVILLE FIRE DISTRICT**
**531 Sweet Hollow Rd**
**Melville, NY 11747**

**Mintzer Sarowitz**
**Zeris Ledva & Meyers LLP**
**17 West John Street, Suite 200**
**Hicksville, NY 11801**

**EXHIBIT B**

# CONSTITUTION
# AND BYLAWS
OF THE
# MELVILLE VOLUNTEER
# FIRE DEPARTMENT
## MELVILLE FIRE DISTRICT

**MELVILLE, NEW YORK 11747**



**May 2005**

j.   Members shall at all times observe respectful behavior to the Commanding Officers and obey all orders of their Superior Officers.

k.   After fires or drills, at the order of the Officer-In-Command, it shall be the duty of members to assist in restoring and cleaning the apparatus to be ready for the next alarm unless excused by the Officer-In-Charge.

l.   No member shall absent himself from three (3) consecutive meetings without a written excuse; nor miss four (4) meetings in any one year without a written excuse.

m.   Any member of the Department, on being elected to The Board of Fire Commissioners of the Melville Fire District, may still retain their active membership in the Department.

### SECTION 2: MINIMUM ANNUAL PERFORMANCE REQUIREMENT

a.   The Minimum annual performance requirement for membership in the Melville Volunteer Fire Department shall be according to the following schedule:

| YEARS OF SERVICE | ALARMS | DRILLS | MISCELLANEOUS |
|---|---|---|---|
| Less than 10 | 250 | 10 | 25 |
| 10 through 19 | 175 | 10 | 25 |
| 20 through 29 | 100 | 10 | 25 |
| More than 30 and Ex-Chiefs | 50 attendance's in any combination | | |

Alarms Category = Responses to requests from the public.
Drills Category = Department training sessions open to all members.
Miscellaneous Category = Work details, funerals, firematic/medical training, parades, stand-bys, fund drive, duty crew, committee meetings and the monthly meeting of the department, company or rescue squad.

b.   Years of service to be determined based on completed years of service as of December 31st of that year

c.   A member may request a performance report from the department secretary.

d.   A member not satisfying his or her performance requirement shall not accrue credit for that year towards years of service.

e.   Any member not satisfying their performance requirement for any three out of five consecutive years shall be removed from the rolls. If that member is eligible for Life Membership, they will automatically be transferred to the Life Membership rolls.

**EXHIBIT C**

# CONSTITUTION
# AND BYLAWS
OF THE
# MELVILLE VOLUNTEER
# FIRE DEPARTMENT
## MELVILLE FIRE DISTRICT

**MELVILLE, NEW YORK 11747**



**May 2005**

# ARTICLE 6 -- LEAVE OF ABSENCE

## SECTION 1: CLASSIFICATION

There shall be three (3) classifications of Leave of Absence.  They shall be known as:

a. *Personal Leave* - Members on personal leave of absence shall not respond to alarms, drills, parades, work details and shall not take part at meetings and are not to enjoy the social privileges of this Department or its Companies. The exempt time of a member per Article 5, Section 9, shall be discontinued as of the date the leave is granted until such time the member has returned to active service.

b. *Medical Leave* - Members on medical leave of absence are excused from attendance at fires, rescue calls, drills, parades, but may attend meetings, fire schools and all social activities.  The Chief may seek the advice of the Department Surgeon and, if requested, any member shall subject himself to medical examination by the Department Surgeon. No member, under doctor's care, who is temporarily incapacitated, shall be considered for firefighting duty until such member presents a doctor's release to the Department.

c. *Military Leave* - Members on military leave of absence shall not respond to fire calls, rescue calls, parades, details, meetings, but may, at the discretion of the Chief, be invited to attend meeting and social activities of this Department. Members on military leave of absence in attendance at a Department or Company meeting may express an opinion but shall not vote or transact business.


## SECTION 2: REQUESTS FOR LEAVE

All requests for any type of leave of absence shall be referred, in writing, to the Company Captain and Chief of the Department, then reported at the next regular meeting of the Department.


## SECTION 3: TIME PERIOD OF LEAVE

No leave of absence, except military leave, shall be granted for a period of more than six (6) months duration at any one time.  Personal leave of absence shall not be granted beyond one (1) year.  Medical leave of absence may be extended as required at the discretion of the Chief.

**EXHIBIT D**



RE'o D
6-29-09

# *Melville Fire Department*
### Office of the Chief

531 Sweet Hollow Road, Melville, New York 11747
Phone: 631-423-2635 • Ext. 130 • Fax: 631-427-4121

James Harrison, Chief

Robert Warren, 1st. Assistant          Michael McKeefrey, 3rd Assistant
Michael Carrieri, 2nd Assistant        David Kugler, 4th Assistant

June 25th, 2009

Keith McDonald
116 Old Country Road
Melville, NY 11747

Dear Keith:

In anticipation of your return to active status on June 26th we need to get a few housekeeping items addressed to get you back in service. They are:

1. Annual Medical Evaluation by NDI
2. Review of NYS Paramedic Status
3. Chauffeur Training Vehicle Re-familiarization
4. Drills for 2009

Medical Evaluation
Until such time as you complete your annual physical with NDI you may not respond to or participate at alarms, hands on drills or sign for alarms/hands on drills. You have until July 31st to get your physical completed. If not completed by July 31st you will be placed on medical suspension in accordance with the District Policy regarding physicals and will have an additional 30 days to complete your physical. If not completed by August 31st you will be referred to the Ex-Chief's committee for Life Membership. If you have any medical issues that prevent you from performing as a firefighter/EMT-P in an unrestricted capacity, or any issues that preclude you from passing the department annual physical you may submit a letter to be placed on medical leave before July 31st. The July NDI schedule is usually posted the first week in July.

Review of NYS Paramedic status
The NYS Paramedic Certification we have on file is dated 07/31/07. In order to practice as a Paramedic, please submit a photocopy of your recent card with a current date and also provide documentation that you have completed the required updates per Nassau County Protocol such as ETI, Spinal Immobilization, etc.

Chauffeur Training Re-familiarization
According to our records, the last alarm you chauffeured any vehicles was on 4/10/2006 therefore it has been quite some time since you have driven or operated apparatus. Therefore you are required to refresh on each vehicle class with the chauffeur training committee before driving/operating any vehicles in that class. Chauffeur testers are posted on the training bulletin board.

Drills for the Remainder of the Year
The certification period for SCBA has passed for this year so you may not qualify as an interior firefighter until January 2010. You must complete one each of the following before the end of 2009 to avoid lockout at the start of 2010:

1. Engine Operations – Offered: 7/12, 7/19, 8/12, 9/9, 10/14 and 11/1
2. Truck Operations - Offered: 7/12, 7/19, 8/12, 9/9, 10/14, 11/1
3. Extrication - Offered: 9/6 and 11/8
4. Emergencies - Offered: 8/2, 8/16, 11/15
5. Hazmat Awareness – View In-house video within 60 days
6. Bloodborne pathogens – View In-House video within 60 days

There are an adequate number of drills left in the year therefore it is my expectation that you will be able to complete the requirements for 2009. A copy of the 2009 drill schedule is attached.


Sincerely,

James Harrison
Chief of Department

**EXHIBIT E**

# MELVILLE FIRE DISTRICT

(631) 423-3852
FAX (631) 423-3854

531 SWEET HOLLOW ROAD, MELVILLE, NEW YORK 11747

BOARD OF FIRE  COMMISSIONERS

SALVATORE T. SILVESTRI
CHAIRMAN

GERARD McDONALD
JAMES T. COSCHIGNANO JR.
ROBERT A. REISER
RUDY ANGEBRANDT

DP-059

## DISTRICT POLICY

### FIREFIGHTER CLASSIFICATIONS

Whereas the District has been advised that it is necessary to classify firefighters according to their responsibilities and to take the necessary precautions to insure that individual firefighters are physically fit for such duties, the following policy on Firefighter Classifications is hereby adopted:

All firefighters shall be classified as either Class A, Class B or Class C firefighters.

Class A firefighters shall be certified physically fit to perform all duties reasonably anticipated for interior structural firefighting and utilization of self-contained breathing apparatus.

Class B firefighters shall be certified physically fit to perform all duties reasonably anticipated for all emergency services rendered by the fire district other than interior structural firefighting and utilization of self-contained breathing apparatus.  Rescue Only personnel shall also be classified as Class B firefighters.

Class C firefighters shall be certified physically fit to perform all administrative support duties anticipated in connection with the emergency services rendered by the fire district.

All certifications shall be by a duly recognized medical organization licensed under the laws of the State of New York for the practice of medicine and shall be required as more fully detailed in the District's policy on physical examinations.

All entry level firefighters will be required to pass a Class A physical prior to their acceptance into the Department, except entry-level Rescue Only personnel shall be required to pass a Rescue Only Class B physical, as specified in District Policy DP-058, Physical Examinations.

Dated:          January 13, 1997
Revised:        March 25, 1997
Revised:        October 1997